## McLafferty v. Cohen

*Neil T. Murray,* for plaintiff.
*Kenneth T. Levine,* for defendant.

HERRON, *J.,* May 10, 2001—Plaintiff David P. McLafferty has filed a petition to confirm liquidator's award and order and an amended petition to enforce liquidator's order (collectively, petitions). Because the liquidator's decision is not a valid arbitration award, it

cannot be confirmed, and the court is issuing a contemporaneous order denying the petitions.

## BACKGROUND

From May 1, 1993 until April 1, 1997, defendants Craig A. Cohen and Lawrence M. Stein and plaintiff David P. McLafferty practiced law together as partners in the firm of McLafferty, Cohen & Stein. The terms of the partnership were set forth in a general partnership agreement dated May 1, 1993 and signed by the three parties.

Article eight of the agreement addresses termination of the partnership:

"In the event that any partner wishes to terminate his relationship with the partnership, he shall give all of the partners 90 days['] written notice of his intent to do so. In any event, other than that described in paragraph 11.01[1] where a partner notifies the other partners in writing of his intent to terminate his relationship with the partnership, then the partnership shall be terminated 90 days following the date of the notice (the termination date) and shall be liquidated as provided in paragraph 8.02." Agreement at ¶8.01.

The agreement also provides for the appointment of a liquidator to assist in the winding up of the partnership (liquidator):

"In the event that the partnership is terminated as described in paragraph 8.01, one or more liquidators shall be appointed who shall have authority to wind up the

---

1. Paragraph 11.01 of the agreement addresses death, disability and retirement.

affairs of the partnership and to make distribution to the creditors of the partnership and the partners as provided in this paragraph. The liquidator(s) shall be any person or persons who the partners unanimously designate to serve in that capacity. In the event that no such unanimous agreement is reached by the termination date, then a liquidator shall be selected by arbitration pursuant to the provisions of the American Arbitration Association whose decision shall be binding, final and not appealable. In the event any liquidator selected pursuant to this process shall resign or be unable to serve, then a replacement liquidator shall be selected by the same process. The fees of the liquidator shall be paid by each partner, pro rata, in accordance with the partnership percentages set out in paragraph 3.01(a) of this agreement." Agreement at ¶8.02(a).

McLafferty gave notice of his intent to terminate the partnership pursuant to paragraph 8.01 on April 1, 1997. On May 24, 1999, over two years later, McLafferty filed a demand with the American Arbitration Association for the appointment of a liquidator.[2] The AAA responded by appointing Louis Coffey as liquidator on August 13, 1999.

After Coffey's appointment, McLafferty requested that he resolve a dispute over the interpretation of para-

---

2. McLafferty's demand for arbitration requests, as relief, "[a] complete accounting of the former partnership contingency and hourly fee files in the possession of Cohen and Stein, and a complete accounting of all fees received on former partnership cases by Cohen and Stein, including reimbursement of costs, which may be approximately $50,000 or greater." No reference is made to an interpretation of the agreement.

graph 8.02(g)(iii) of the agreement, which addresses the distribution of post-dissolution contingency fees:

"[F]ifty percent of the remaining balance [after the deduction of certain costs and expenses] shall be paid to the partnership to be distributed as partnership property by the liquidator as provided in paragraph 8.02(b)[3] hereof and 50 percent of the remaining balance shall be paid directly to the handling attorney."

McLafferty argued that, under paragraph 8.02(g)(iii), the handling attorney should receive 50 percent of any balance and the other two partners should divide the partnership's 50 percent of the balance. The defendants disputed this interpretation, maintaining that the 50 percent paid to the partnership was to be treated like all other partnership assets and divided equally among all three partners. The defendants further objected to Coffey adjudicating the dispute and asserted that paragraph 8.02(a) does not authorize the arbitration of disputes. In spite of these objections, Coffey scheduled a liquidation hearing for June 20, 2000 to review paragraph 8.02(g)(iii).[4]

Four days before the hearing was to be held, McLafferty's counsel sent a letter to Coffey withdrawing McLafferty's request for an interpretation of para-

3. Paragraph 8.02(b) of the agreement sets forth the order of priority for distribution of partnership assets. According to the provision, after assets are used to pay creditors, to establish contingent reserves, to repay partner loans and to return capital, each partner will receive one-third of the remaining amount.

4. In response, the defendants filed a petition for a preliminary injunction to enjoin the arbitration on November 24, 1999. The court denied this petition on January 11, 2000.

graph 8.02(g)(iii). At the hearing, Coffey announced that he would abstain from reviewing the provision in question, as McLafferty had withdrawn his request that he do so. At the hearing, however, McLafferty's counsel stated once again that his client disputed the defendants' interpretation of paragraph 8.02(g)(iii) but offered no alternative manner for resolving the dispute. Coffey ultimately issued a letter that ordered the defendants to place $70,948.01 in disputed fees into an escrow account and to distribute $110,094.51 (funds) to McLafferty based on the conclusion that "none of the parties dispute that he is entitled to receive" this amount.[5]

The defendants filed a complaint in a related matter[6] seeking a declaratory judgment as to the rights of the parties under certain provisions of the agreement, including paragraph 8.02(g)(iii), as well as the effect of these provisions on the distribution of post-dissolution contingency fees. McLafferty filed preliminary objections, all of which were denied by the court. In considering the objections, the court concluded that the funds dispute is not within the purview of the agreement's arbitration clause and that the court therefore had subject matter jurisdiction.

On December 14, 2000, McLafferty filed his original petition, which requested that the court confirm the decision and order the distribution of the funds. McLafferty filed his amended petition on April 6, 2001, which reiterates the original requests and also asks the court to order that the fees be placed in an escrow ac-

---

5. The conclusions reached by Coffey are referred to as the "decision."

6. *Cohen v. McLafferty,* C.P. Phila., July 2000, no. 923.

count. The court heard arguments on the petitions on May 9, 2001

## DISCUSSION

No Pennsylvania statute or case authorizes the confirmation of a liquidator's award, although 42 Pa.C.S, §7342 allows a court to confirm a common-law arbitrator's award. Thus, the decision can be confirmed only if it qualifies as an arbitration award.

For the decision to be deemed an arbitration award, either the subject of the dispute must fall within the scope of the agreement to arbitrate in paragraph 8.02(a), with Coffey functioning as a liquidator and an arbitrator, or the term "arbitration award" must be construed to encompass a liquidator's award, including the decision.[7] It is unclear which path McLafferty is urging the court to take to confirm the decision.[8] In either case, however, the decision is not a valid arbitration award, and, McLafferty's assertions to the contrary, the petitions must be denied.

---

7. Essentially, finding that the decision is a valid arbitration award requires a broad interpretation of either paragraph 8.02(a)'s agreement to arbitrate or the term "arbitration award."

8. McLafferty relies on only two cases, neither of which supports enforcing the decision. The first is *Brown v. D. & P. Willow Inc.,* 454 Pa. Super. 539, 546-47, 686 A.2d 14, 18 (1996), in which the court examined a fee dispute between an attorney and a former client and focused on whether compulsory arbitration was appropriate where the former client had not consented to the process. The second case is the unpublished Superior Court memorandum opinion in *Hamati-Sayegh v. Lang,* which McLafferty, relying exclusively on a description of the opinion in *The Legal Intelligencer,* has failed to attach to his petitions. In that case, the Superior Court ordered funds disputed between two attorneys placed in an escrow account under circumstances substantially different from those outlined here. Even if this case were on point,

### I. *The Agreement to Arbitrate Does Not Cover Disputes over Interpretation of the Agreement*

In determining their scope, "[a]greements to arbitrate are to be strictly construed and should not be extended by implication" *PBS Coal Inc. v. Hardhat Mining Inc.* 429 Pa. Super. 372, 377, 632 A.2d 903, 905 (1993). See also, *Midomo Co. Inc v. Presbyterian Housing Development Co.,* 739 A.2d 180, 190 (Pa. Super. 1999) (arbitration agreements are to be confined to the "clear, express and unequivocal intent of the parties as manifested by the writing itself"); *Brown v. D. & P. Willow Inc.,* 454 Pa. Super. 539, 546-47, 686 A.2d 14, 18 (1996) (noting that forcing a party into arbitration without its consent is "violative of common law and statutory principles" and a "curtailment of one's substantive and due process rights").

In the objections, it appeared McLafferty was arguing that paragraph 8.02(a) provided for the arbitration of all liquidation disputes and that the matter was not properly before the court. In overruling the objections in *Cohen v. McLafferty,* July 2000, no. 923 (C.P. Phila. Sept. 29, 2000) (Herron, J.),[9] the court reasoned that the dispute over the funds did not fall within the agreement's arbitration provision:

"It is clear that the parties have agreed to arbitration to resolve disputes over who the liquidator will be. As such, the court does not have jurisdiction to address the selection of a liquidator. In contrast to McLafferty's

---

however, it would be irrelevant, as unpublished Superior Court's memorandum opinions have no precedential value. *Commonwealth v. Phinn,* 761 A.2d 176,179 (Pa. Super. 2000). In sum, there is no need to examine either case in further detail.

9. Opinion available at http://courts.phila.gov/cpcvtcomp.htm.

claims, however, nothing in section 8.02(a) requires arbitration over interpretations of the agreement. Since an agreement to arbitrate must be narrowly construed, the provisions mandating arbitration to select a liquidator cannot be blurred into the preceding sentences of the paragraph. Consequently, the arbitration provision does not require the arbitration of disputes over either the winding up process or interpretation of the agreement. Because the issue in controversy does not fall within the scope of the parties' agreement to arbitrate, nothing precludes the court from exercising subject matter [jurisdiction], and McLafferty's objection is overruled." Slip op. at 7.

The same reasoning may be applied here, as McLafferty has failed to show that the dispute over the fees and the funds falls under the paragraph 8.02(a) agreement to arbitrate.

## II. *There Is No Basis for Treating a Liquidator's Award As an Arbitration Award*

The argument that the term "arbitration award" encompasses the decision and other liquidators' awards must also fail. There is no case law to support a definition of "arbitrator" that includes a liquidator, nor is there any authority that defines an arbitration award to include a liquidator's decision. Because the decision is not an arbitration award, it is not governed by the confirmation process in section 7342 or any other statute the court is aware of. Thus, the court cannot confirm the decision.

The only arguably valid reason for giving McLafferty access to the funds is the fact that in the past, the defendants appear to have admitted McLafferty's right to the

funds.[10] This may have provided a rationale for the decision, but it cannot allow the court to overlook the fact that the decision is not an arbitration award and that there is no valid arbitration award to be enforced here. As result, even if the defendants have conceded that McLafferty is entitled to the funds, the proper way to secure their disbursal is not a petition to confirm the decision.

## CONCLUSION

The decision is not a valid arbitration award. As such, there is no Pennsylvania statute or case law that allows its confirmation, and the petitions are denied.

## ORDER

And now, May 10, 2001, upon consideration of plaintiff David P. McLafferty's petition to confirm liquidator's award and order and amended petition to enforce liquidator's order, defendants Craig A. Cohen and Lawrence M. Stein's responses thereto and arguments before the court, and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered and decreed that the petitions are denied.

---

10. During the liquidation hearing, Cohen acknowledged that McLafferty was entitled to compensation "in the neighborhood of $110,000." Notes at 27. In addition, in a letter attached to the petitions and dated May 12, 2000, Stein states that "[m]onies to which [McLafferty] is entitled . . . is being held in a separate escrow account at First Union Bank." An attachment to the letter sets forth $110,124.50 as the "Sub total of monies owed to DPM." The defendants now deny that McLafferty is entitled to the funds. Defendants' response at ¶9.